**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 18-1407

_____

PAZA STAFFING SERVICES, INC.,
                                        Appellant

v.

COMMISSIONER OF INTERNAL REVENUE

_____

On Appeal from the United States Tax Court
(T.C. 06881-12R)
Tax Judge: Hon. Mark V. Holmes

_____

Argued:  September 25, 2018

Before: AMBRO, CHAGARES, and GREENAWAY, JR., Circuit Judges.

(Filed: November 2, 2018)

Harold A. Chamberlain, Esq. **[ARGUED]**
15523 Fawn Villa Drive
Houston, TX 77068

        Counsel for Appellant

Julie C. Avetta, Esq. **[ARGUED]**
Thomas J. Clark, Esq.
United States Department of Justice
Tax Division
950 Pennsylvania Avenue, N.W.
P.O. Box 502
Washington, DC 20044

        Counsel for Appellee

OPINION[*]

CHAGARES, Circuit Judge.

Paza Staffing Services, Inc. appeals the decision of the Tax Court denying its petition for a declaratory judgment that its Employee Stock Ownership Plan ("ESOP") qualified for tax-exempt status under 26 U.S.C. § 501. For the following reasons, we will affirm.

I.

Alex Zapolanski is a surgeon who was the president, secretary, and sole owner of Golden Gate Cardiothoracic Surgery Medical Group, APC. Aside from Zapolanski, Golden Gate employed five other people.

In late 1998, Zapolanski acquired 100% of the stock of Paza Staffing Services, Inc., a new S Corporation that had just been created. He then created an ESOP for Paza, appointed himself trustee, and sold all his Paza stock to the ESOP. And then, as Paza's president, Zapolanski entered into two contracts. The first was an employment contract with himself, making him an official Paza employee. Because he was Paza's only employee, this made him the ESOP's sole beneficiary. The second was a leasing agreement with Golden Gate, under which Paza would lease its employees (meaning,

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

Zapolanski) to Golden Gate. As president of both Paza and Golden Gate, he signed both contracts on behalf of both parties.

The tax benefit of this arrangement soon followed. In 1999, Golden Gate had a total income of $1,292,884. But, largely because it paid Paza $835,786 for Zapolanski's services, Golden Gate reported a negative taxable income. Paza, of course, now had a total income of $835,786. But as an S Corporation, that income passed through to its only shareholder — the tax-exempt ESOP. Zapolanski also took an $83,000 salary from Paza.

In May 1999, Paza applied with the Internal Revenue Service ("IRS") for a determination that its ESOP qualified for tax-exempt status under 26 U.S.C. § 501(a). The application listed the "employer-wide" number of employees as "1." Supplemental Appendix ("S.A.") 45. Later that year, the IRS determined that the ESOP qualified.

But eventually, the IRS reexamined Paza's ESOP, and, in February 2010, it proposed to disqualify it as tax-exempt. The IRS explained that Paza and Golden Gate comprised a "controlled group of corporations" under 26 U.S.C. § 414(b), and, because the ESOP did not benefit Golden Gate's employees, it failed the "minimum coverage requirement" of 26 U.S.C. § 410(b). In December 2011, the Commissioner issued a "final non-qualification letter" stating that the ESOP was not tax exempt under 26 U.S.C. § 501(a).

Paza petitioned the Tax Court to reverse the non-qualification letter. Paza and the Commissioner filed cross-motions for summary judgment, and the Tax Court granted the Commissioner's motion and denied Paza's. Paza timely appealed the Tax Court's Order

3

and Decision to the Court of Appeals for the Ninth Circuit, which transferred the case here.

## II.

The Tax Court had jurisdiction under 26 U.S.C. §§ 7442 and 7476(a), and we have appellate jurisdiction under 26 U.S.C. § 7482(a). We review de novo the Tax Court's granting of summary judgment. Hartmann v. Comm'r, 638 F.3d 248, 249 (3d Cir. 2011) (per curiam). Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Thomas v. Cumberland Cty., 749 F.3d 217, 222 (3d Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).

## III.

To qualify as an employee benefit plan under 26 U.S.C. § 401 — and thereby receive tax-exempt status under § 501(a) — an ESOP must "satisf[y] the requirements of section 410." 26 U.S.C. § 401(a)(3). One of those requirements, found in § 410(b), is the "minimum coverage requirement," which requires that the plan benefit "at least 70 percent of employees who are not highly compensated employees" or "(i) a percentage of employees who are not highly compensated employees which is at least 70 percent of (ii) the percentage of highly compensated employees benefiting under the plan." 26 U.S.C. § 410(b)(1). And for the purposes of this minimum coverage requirement, "all employees of all corporations which are members of a controlled group of corporations (within the meaning of [26 U.S.C.] section 1563(a), determined without regard to section

4

1563(a)(4) and (e)(3)(C)) shall be treated as employed by a single employer." 26 U.S.C. § 414(b).

Section 1563(a), in turn, provides that a group of corporations are part of a "controlled group" if

> 5 or fewer persons who are individuals, estates, or trusts own . . . stock possessing —
>
> (A) at least 80 percent of the total combined voting power of all classes of stock entitled to vote, or at least 80 percent of the total value of shares of all classes of stock, of each corporation, and
>
> (B) more than 50 percent of the total combined voting power of all classes of stock entitled to vote or more than 50 percent of the total value of shares of all classes of stock of each corporation, taking into account the stock ownership of each such person only to the extent such stock ownership is identical with respect to each such corporation.

26 U.S.C. § 1563(f)(5)(A)(2). In this analysis, "[s]tock owned, directly or indirectly, by or for an estate or trust shall be considered as owned by any beneficiary who has an actuarial interest of 5 percent or more in such stock, to the extent of such actuarial interest." 26 U.S.C. § 1563(d)(2), (e)(3)(A).

Here, Zapolanski owned 100% of Golden Gate, and he also constructively owned 100% of Paza, as he was the sole beneficiary of Paza's ESOP, which owned all of Paza's stock. Paza and Golden Gate, therefore, constitute a controlled group of corporations under § 414(b), and thus the ESOP needed to benefit at least 70% of the non-highly compensated employees of both Golden Gate and Paza to qualify for tax-exempt status. Because it benefited only Zapolanski (who is a highly compensated employee, see 26

5

U.S.C. § 414(q)(1)(A)) and not Golden Gate's other employees (who are not), the ESOP violated the minimum coverage requirement.

Paza argues that § 414(b) does not apply to this case because § 414(m) applies instead.[1] Subsections 414(b) and 414(m), however, provide separate avenues for treating employees of multiple entities as "employed by a single employer." 26 U.S.C. § 414(b), (m). Whether Golden Gate's employees are attributable to Paza under § 414(m) does not change the fact that they are attributable to Paza under § 414(b).

Paza also argues that Zapolanski should not be considered the owner of Paza's stock because, under 26 U.S.C. § 1563(e)(3)(C), stock owned by a trust will not be attributed to its beneficiary under § 1563(e)(3) if the stock is owned "by any employees' trust described in section 401(a) which is exempt from tax under section 501(a)." But § 1563(e)(3)(C) does not apply here because, for the purpose of the minimum coverage requirement, the existence of a controlled group of corporations is "determined without regard to section 1563(a)(4) and (e)(3)(C)." 26 U.S.C. § 414(b) (emphasis added). Paza also cites 26 U.S.C. § 414(m)(6) to dispute Zapolanski's constructive ownership, but that provision does not apply to § 414(b). See 26 U.S.C. § 414(m)(6) ("For purposes of this subsection . . . .").

## III.

For the foregoing reasons, we will affirm the Order of the Tax Court.

---

[1] The Tax Court held that Paza had abandoned this argument and so declined to address it. We disagree — Paza advanced the argument both in its initial petition and in its opposition to the very motion that the Tax Court granted. We therefore assess the argument on the merits.